No. 13-6375

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**
_____

**COLIN MCDONALD, Plaintiff-Appellant**

**v.**

**WEBASTO ROOF SYSTEMS, INC., Defendant-Appellee**

_____

**On Appeal from the United States District Court
for the Eastern District of Kentucky**

_____

**BRIEF OF APPELLANT**
_____

**Stewart C. Burch
Logan Burch & Fox
114 West Clinton Street
Frankfort, Kentucky 40601
(502) 875-3884
Fax: (502) 875-1113
Email: sburch@lgpllc.com
Web Address: http://www.lbflawky.com**

**Counsel for Plaintiff-Appellant**

**ORAL ARGUMENT REQUESTED**

## DISCLOSURE OF CORPORATE AFFILIATION
## AND FINANCIAL INTEREST

Appellant Colin L. McDonald, pursuant to 6th Cir. R. 26.1, makes the following

disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned company?

      **No.**

2.      Is there a publicly owned company, not a party to the appeal, who has a

financial interest in the outcome?

      **No.**

Respectfully submitted,

LOGAN BURCH & FOX

By:    /s/ Stewart C. Burch
        Stewart C. Burch, KY Bar #81181
        114 West Clinton Street
        Frankfort, Kentucky 40601
        Phone: (502) 875-3884
        Fax: (502) 875-1113
        Web: http://www.lbflawky.com
        Email: sburch@lgpllc.com

December 20, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      I.     The district court erred by concluding that Webasto proffered
           a legitimate, non-discriminatory reason for not hiring McDonald
           under the *McDonnell Douglas-Burdine* framework. . . . . . . . . . . . 12

      II.    The district court erred by concluding that Colin McDonald
           could not overcome the reason proffered by Webasto
           under the *McDonnell Douglas-Burdine* framework. . . . . . . . . . . . 17

      III.   Issues of fact preclude the dismissal of the state
           claims of McDonald. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

*Aker v. Smith*, 290 S.W.2d 496, 498 (Ky. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lichtefeld-Massaro, Inc. v. R.J. Manteuffel Co., Inc.*, 806 S.W.2d 42
(Ky. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1084
(6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412
(6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 587; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792; 93 S.Ct. 1817;
36 L.Ed.2d 668 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Summers v. Leis* 368 F.3d 881, 885 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248;
101 S.Ct. 1089; 67 L.Ed.2d 207 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

## STATUTES, RULES AND FEDERAL REGULATIONS

28 U.S.C.A. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

28 U.S.C.A. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

29 C.F.R. §1630.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

29 C.F.R. §1630.14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

29 C.F.R. §1630.14(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

42 U.S.C.A. §12102(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C.A. §12111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

42 U.S.C.A. §12112(a) & (b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Colin McDonald respectfully requests oral argument. Mr. McDonald believes that oral argument would be appropriate due to the novelty of the issues presented. Oral argument would assist the Court.

## STATEMENT OF JURISDICTION

This is an action under the Americans with Disabilities Act, as amended, 42 U.S.C.A. §12111 *et seq.* ("ADA"). Subject matter jurisdiction in the district court was based on 28 U.S.C.A. § 1331. The basis of jurisdiction in the Court of Appeals is 28 U.S.C.A. § 1291. A final judgment (granting summary judgment) was entered by the Eastern District of Kentucky on October 18, 2013 (Memorandum, Opinion & Order, RE 32, Page ID #281, and Judgment & Order of Dismissal, RE 33, Page ID #295). Notice of Appeal was timely filed in the Eastern District of Kentucky on October 23, 2013 (Notice of Appeal, RE 34, Page ID #297).

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.      Whether the district court erred in concluding that the reason proffered by Webasto for not hiring McDonald was legitimate under the McDonnell Douglas-Burdine framework;

II.      Whether the district court erred by concluding that Colin McDonald could not overcome the reason proffered by Webasto under the McDonnell Douglas-Burdine framework;

III.      Whether material issues of fact exist in this case which preclude the entry of summary judgment on McDonald's state claims.

## STATEMENT OF THE CASE

The Appellant ("McDonald") filed his Complaint against the Appellee ("Webasto") on December 29, 2011. (Complaint, RE 1, Page ID #1.) The Complaint alleged that Webasto violated the ADA by wrongfully regarding McDonald as disabled and refusing to hire him. Id. The Complaint also alleged a breach of contract claim and a claim for promissory estoppel against Webasto. Id.

The district court granted summary judgment to Webasto on October 18, 2013. (Judgment, RE 33, Page ID #295.) The district court reasoned that, although McDonald had established a prima facie case under the ADA, McDonald would be unable to refute the reason proffered by Webasto in defense of its conduct. (Memorandum, Opinion & Order, RE 32, Page ID #281.)

On October 23, 2013, McDonald timely filed his Notice of Appeal from the Judgment & Order of Dismissal. (Notice of Appeal, RE 34, Page ID #297.)

## STATEMENT OF FACTS

McDonald filed suit against Webasto because Webasto regarded McDonald as disabled and refused to hire McDonald in spite of McDonald's ability to perform the job at issue without the need for accommodation.

McDonald applied for the job of maintenance technician at Webasto on March 4, 2011. McDonald interviewed with Webasto on March 7, 2011, and was offered a

job within two to three hours.  (Deposition of Colin McDonald, RE 24-1, Page ID #197-198.)

At the time that Colin McDonald accepted the job offer from Webasto, he was working at Washington Penn.  (Deposition of Colin McDonald, RE 24-1, Page ID #200.)  McDonald's job at Washington Penn was more physically demanding than the Webasto job.  (Deposition of Colin McDonald, RE 24-1, Page ID #199.)  In reliance on the job offer, which was accepted, McDonald tendered a two-week notice of resignation to Washington Penn on March 7 or 8, 2011.  Id, at Page ID #201.

McDonald disputes that the job offer from Webasto was conditional upon passing a physical examination.  Webasto did not disclose the necessity of a physical to McDonald in writing, as was customary for Webasto.  Human resources admitted that they had no evidence of having delivered such a document to Colin McDonald. (Deposition of Liz Beatty, RE 24-2, Page ID #206-207.)

One week after putting in his notice of resignation with Washington Penn, Mr. McDonald was asked by Webasto to undergo a physical, a drug examination, and a criminal background check.  McDonald consented to and passed the drug and criminal background check.  McDonald also passed the physical, as will be shown below. (Deposition of Colin McDonald, RE 24-1, Page ID #200.)

On March 10, 2011, Colin McDonald submitted to a physical examination with Red Point Medical, PSC at the request of Webasto.  (Red Point Medical

Examaination, RE 24-4, Page ID #210.)  The results of the medical examination were unequivocal and critical to this case.  Red Point Medical stated:

> "I have examined the applicant.  On the basis of that examination, I believe the applicant:
> ☒ Can perform essential job functions."  Id.

Prior to its conclusion, Red Point noted a history of lumbar bulging disks, but stated that "Dr. Lyon states no restriction needed."  Id.

The conclusions reached by Red Point were the result of a complete physical of Colin McDonald.  (Deposition of Heather Pile, RE 24-5, Page ID #211.)  Red Point found no objective findings of pain and a full range of motion for the lumbar spine. Id.  Red Point opined that Colin McDonald could perform all necessary job functions based on the position description provided by Webasto.  Id.  The job requirements required, among other things, that McDonald be able to lift and carry weight greater than 35 pounds and stand for long hours.  (Position Description, RE 24-6, Page ID #217.)

Red Point delivered the report of McDonald's physical examination to Liz Beatty, an employee in the human resources department at Webasto.  Ms. Beatty had no experience or training relating to the ADA.  (Deposition of Liz Beatty, RE 24-2, Page ID #205.)  Despite the absence of any ADA training or medical training, and ignoring the opinion of Red Point that McDonald could perform all essential job functions, Ms. Beatty contacted Heather Pile on March 21, 2011. (Telephone Record,

RE 24-7, Page ID #218.)  A note from the conversation, taken by Heather Pile, reads as follows:

> "Liz with Webasto
> 509-4706
> Called with questions regarding Hx Lumbar bulging discs. This was discussed with GTS.  Given exam is benign and pt has provided a statement from Dr. Lyon stating no restrictions are needed.  We have no specific reason to states [sic] Mr. McDonald cannot do the job.  If there are concerns, a fit-for-duty with Dr. Lester can be required - HP."  Id.

After the phone conversation with Heather Pile, Liz Beatty chose to ignore the opinion of Webasto's medical provider and seek a second examination from Dr. Lester at Kentucky Back Center.  The second examination of McDonald, at the Kentucky Back Center, occurred on March 23, 2011.  By the time that the second examination was administered, McDonald was unemployed, having resigned from his prior employment with Washington Penn in reliance upon the job offer from Webasto. (Deposition of McDonald, RE 24-1, Page ID #199.)

Despite the position now taken by Webasto, Colin McDonald passed the pre-employment physical with Kentucky Back Center.  (Deposition of Dr. Lester, RE 24-8, Page ID #219-220.)  Dr. Lester responded at his deposition as follows:

> "Q.  All right.  In your opinion, did Colin McDonald pass the pre-employment physical?
> A.  As far as, you know, I think that some of the concerns of what he was able to do and stuff that he was able to lift and do those type of things.  Yes, given the evaluation.

4

> Q. So he passed that portion of the test?
> A. Yes.
> ...
> Q. Was there anything in the physical testing that your office performed on Mr. McDonald that would indicate that he could not perform job duties on a consistent basis?
> A. On what he did during the evaluation, no.
> Q. Yes, sir. So he was fine during the actual physical test or evaluation.
> A. That's correct." Id.

Colin McDonald thus met all of the physical requirements of the position description provided by Kentucky Back Center by Webasto, even when Liz Beatty improperly added additional hand-written requirements to the position description before submitting the same to Kentucky Back Center. (Deposition of Liz Beatty, RE 24-2, Page ID #208; Position Description, RE 24-6, Page ID #217.)

Despite Dr. Lester's candid admission that Colin McDonald passed the pre-employment physical, Dr. Lester issued a vague two sentence letter to Liz Beatty dated March 31, 2011. The letter from Dr. Lester constitutes the sole reason proffered by Webasto in defense of its violation of the ADA. The letter reads in substantive part:

> "Dear Ms. Beatty,
> I have reviewed the records provided in regards to Mr. McDonald and discussed the finding from his pre-employment physical with Ruth Ann Combs, ARNP. I would not recommend that he work within the job description provided.

> Please do not hesitate to contact my office with any
> questions." (Letter from Lester to Beatty, RE 24-9, Page
> ID #230.)

Dr. Lester's letter did not address the fact that McDonald passed his pre-employment

physical. Even more critically to the issue at hand, Dr. Lester's letter did not answer

the relevant question required by the ADA, i.e., could McDonald perform the essential

job functions? Dr. Lester's correspondence completely avoided the question of

whether Colin McDonald could perform the job for which he was hired.

The district court misunderstood or ignored the language of Dr. Lester's report.

The district court mistakenly asserted in its Memorandum, Opinion & Order granting

summary judgment:

> "Defendant Webasto has come forward with a legitimate,
> non-discriminatory reason for hiring him. It concluded that
> he was not qualified based on the results of the examination
> at the Kentucky Back Center as reported by Dr. Lester and
> which stated that McDonald could not perform the work
> required in the position for which he had been hired."

(Memorandum, Opinion & Order, RE 32, Page ID #292). In finding that Webasto's

reason for breaching its contract with McDonald could not be refuted, the district

court stated:

> "Looking at all of the evidence in the light most favorable
> to the plaintiff, the court agrees that, with hindsight, a
> reasonable juror could conclude that 'Dr. Lester's opinions
> are premised on what the future might hold for Colin
> McDonald and his degenerative disc condition, not the
> evidence before him'...as plaintiff argues. [citation

omitted].  That does not change the fact that Lester simply
communicated to Webasto that plaintiff could not perform
the duties of the job for which he would be employed."  Id.,
at Page ID #292-293.

Contrary to the conclusion of the district court, the one sentence reason offered by Dr.

Lester did not simply communicate that McDonald could not perform the duties of the

job.  Dr. Lester instead opined that he would not recommend the hiring of McDonald,

but failed to give any objective criteria.  The district court converted Dr. Lester's

vague opinion to an actual response as to whether McDonald could perform the

essential job functions.  Id.  A review of the deposition of Dr. Lester revealed that Dr.

Lester issued his opinion without regard for the actual testing conducted on Mr.

McDonald.  Dr. Lester, who never saw or talked with McDonald, and reviewed only

selected medical records, testified as follows:

> "Q.  All right.  In response to a question from Ms. Koch,
> you agree that Mr. McDonald could not safely perform the
> job duties for Webasto.  Do you remember agreeing with
> her on that?
> A.  Yeah.
> Q.  What did you mean by that?
> A.  I did not feel, based upon the records that I reviewed,
> that he could perform those jobs on a sustained level.
> Q.  Now, your qualifier is significant to me, on a sustained
> level.  Because the physical tests show that he had the
> physical ability to perform the job?
> A.  He met - - lifted what we required him to lift at that
> time.
> Q.  Yes, sir.  So you keep coming back to sustainable.  You
> are talking about concerns about what might happen in the
> future, is that a fair statement?

7

A. I think it is based upon, you know, his evaluations and physical condition.  That is the thing that we are looking at as far as that where that he had a problem.  And whether, you know, physically being able to do that and maintain that.

Q.  Which puts us right back to our conversation about degenerative disc disease and stenosis, herniations and bulges.  And I think you agreed with me earlier that a significant percentage of the American workplace workers suffer from some back problem.  Is that a fair statement?

A. As far as not as ongoing, over a long period of time that they necessarily have that.

Q.  Would you say that over half the American workforce has some form of degenerative disc disease?

A.  Yes.  A lot of them are asymptomatic.

Q.    And you can have a herniated disc and be asymptomatic.  Is that correct?

A.  That's correct.

Q.  You didn't talk with Mr. McDonald or personally examine him.  But is there anything in your file that would reflect that he expressed any discomfort or pain in his back at the time your clinic examined him?

A.  I am not aware."  (Deposition of Dr. Lester, RE 24-8, Page ID #227-229.)

Lester relied upon incomplete records which did not reflect that, in the past, McDonald had been on certain work restrictions, but that those restrictions had been completely lifted after a rigorous four to five hour functional capacity test. (Deposition of Mike Pattison, RE 24-10, Page ID #233.)  Dr. Lester admitted that had he been aware of all of the records, which released McDonald from any restrictions, that he would have taken that fact into consideration.  Dr. Lester was further unaware

that Dr. Tibbs had opined that McDonald was not a surgical candidate.  (Deposition of Dr. Lester, RE 24-8, Page ID #224.)

Following receipt of the Kentucky Back Center second opinion, Webasto reneged on its agreement with McDonald and withdrew the job offer.

As a result of Webasto's action, McDonald was forced to dissipate his savings and retirement.  (Deposition of McDonald, RE 24-1, Page ID #203-204.)

McDonald, following Webasto's actions, actively sought employment and was hired by Toyota Engineering and Maintenance Manufacturing on August 1, 2011, where he remains employed.  Mr. McDonald's current duties include strenuous physical activity equal to those at Washington Penn and greater than the requirements at Webasto.  (Id. at Page ID #196.)

On October 18, 2013, the district court entered a Judgment and Order of Dismissal.  (Judgment, RE 33, Page ID #295 and Memorandum, Opinion and Order, RE 32, Page ID #281.)  The district court acknowledged that McDonald had established a prima facie case of discrimination under the ADA in that he had been deprived of the job opportunity based on Webasto regarding McDonald as suffering from a degenerative disc disease.  However, the district court concluded that McDonald would be unable to rebut the reason offered by Webasto in defense, namely the two-sentence letter from Dr. Lester.  As noted above, the district court erroneously

concluded that the Lester report stated that McDonald could not perform the work required for the position in which he had been hired.  Id., at Page ID #292 and 294.

McDonald timely appealed from the dismissal on October 23, 2013.  (Notice of Appeal, RE 34, Page ID #297.)

## SUMMARY OF ARGUMENT

**Issue I:**

The reason proffered by Webasto for refusing to hire McDonald was neither legitimate nor non-discriminatory because: (a) McDonald had already passed his pre-employment physical; (b) subjecting McDonald to a second pre-employment physical violated the ADA and 29 C.F.R. §1630.14(b); and (c), the letter from Dr. Lester, which constitutes the sole reason offered by Webasto for not hiring McDonald, did not address or answer relevant criteria under the ADA.

**Issue II:**

McDonald can establish that the proffered reason by Webasto was pretextual under the McDonnell Douglas-Burdine framework because:  (a)The opinion of Dr. Lester did not provide an affirmative defense under the ADA and was thus insufficient as a matter of law to motivate the action against McDonald; (b) The results of the first physical examination of McDonald which conclude that McDonald could perform all

essential job functions, without accommodation, and the conduct of Webasto in arranging a second examination, create a question of fact as to whether the reason for the second examination was pretextual; and (c) The proffered reason had no basis in fact. The proffered reason did not rely upon ADA established criteria nor the successful completion of physical testing by McDonald, and was premised on vague concerns as to possible future back problems.

**Issue III:**

Material issues of fact exist relating to McDonald's contract and promissory estoppel claims. The district court improperly dismissed the claims based on the Kentucky "at-will doctrine." However, the Kentucky "at-will doctrine" does not prevent recovery of all consequential damages. The doctrine also does not apply in the event that an adverse employment action occurs for an illegal reason, such as violation of the ADA.

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's grant of summary judgment. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The Court must review the evidence and draw all reasonable inferences in favor of McDonald. *Matsushita Electric Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## ARGUMENT

**I.    THE DISTRICT COURT ERRED BY CONCLUDING THAT WEBASTO PROFFERED A LEGITIMATE NON-DISCRIMINATORY REASON FOR NOT HIRING MCDONALD UNDER THE MCDONNELL DOUGLAS-BURDINE FRAMEWORK.**

The district erred by determining that the reason proffered by Webasto for not hiring McDonald was a legitimate, non-discriminatory reason, within the context of the facts and the ADA.

The ADA protects not only individuals with actual disabilities, but individuals who are regarded as impaired.  42 U.S.C.A. §12102(3)(A) provides:

> "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited by this Chapter because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity."

Colin McDonald clearly meets the definition of 'regarded as impaired' in this instance.  Webasto chose to take an adverse employment decision against McDonald because of a history of degenerative disc disease and the conjectural possibility of future injuries, despite medical proof that he could perform all essential job functions.

Because McDonald is a qualified individual under the ADA, Webasto discriminated against McDonald under the ADA by relying on criteria that had

absolutely no relationship to McDonald's physical ability to perform the job.  See 42 U.S.C.A. §12112(a) & (b).

29 C.F.R. §1630.14(b) provides guidance to the scope of any post-offer, pre-employment medical examination:

> "(b) Employment entrance examination.  A covered entity may require a [emphasis added] physical examination (and/or inquiry) after making an offer for employment to a job applicant and before the applicant begins his or her employment duties, and may condition an offer on the results of such examination [emphasis added] (and/or inquiry) if all entering employees in the same job category are subjected to such an examination (and/or inquiry) regardless of disability."

The plain language of the regulation, as emphasized above, permits a single examination of the applicant.  The regulation does not envision multiple examinations, particularly after the first examination revealed that McDonald could perform all essential job functions without any limitation, restriction, or need for accommodation.

The type of medical examination permitted under 29 C.F.R. §1630.14 is described in 29 C.F.R. §1630.14(b)(3):

> "Medical examinations conducted in accordance with this Section do not have to be job related and consistent with business necessity.  However, if certain criteria are used to screen out an employee or employees with a disability as a result of such an examination or inquiry, the exclusionary criteria must be job-related and consistent with business necessity, and performance of the essential job functions cannot be accomplished without reasonable accommodation as required in this part. [citation omitted]"

13

The Red Point Medical examination of Colin McDonald was performed in accordance with 29 C.F.R. §1630.14. That test concluded, without qualification, that McDonald could perform all essential job functions, without any need for any accommodation of any sort. (Red Point Medical Examination Report, RE 24-4, Page ID #210.) After receiving the Red Point report, Webasto was precluded from any further inquiry as to the physical condition of Mr. McDonald. Instead, Webasto relied upon a human resources employee with a complete lack of training relating to either the ADA or the medical issues and forced McDonald to take a second examination. (Deposition of Liz Beatty, RE 24-2, Page ID #205; Telephone Record, RE 24-7, Page ID #218.)

Webasto also tried to stack the deck against McDonald by adding handwritten requirements to the job description provided by Liz Beatty, beyond the written requirements. (Position Description, RE 24-6, Page ID #217).

To compound its egregious conduct, Webasto then accepted, without examination or inquiry, a letter from Dr. Lester which answered none of the questions permitted by the ADA. Dr. Lester merely gave an opinion that he would not hire Mr. McDonald. (Letter from Lester to Beatty, RE 24-9, Page ID #230.) Dr. Lester's criteria was neither job-related nor related to whether or not the essential job functions could be performed with or without reasonable accommodation. 29 C.F.R. §1630.14(b)(3). Dr. Lester's deposition revealed that he in fact ignored McDonald's

successful completion of all functional capacity tests administered by the Lester office and relied instead on what might happen in the future, even though Lester admitted that individuals with a history of degenerative disc disease may remain asymptomatic for indefinite periods of time. (Deposition of Dr. Lester, RE 24-8, Page ID #228-229.)

Lester's opinion in this case is analogous to an opinion that he did not like the color of a car. Instead, Lester should have answered whether the car could run properly and perform the tasks for which it was being purchased.

The district court erred both factually and legally when it concluded that Lester advised Webasto that McDonald could not perform the work required in the position for which he had been hired. (Memorandum & Opinion, RE 32, Page ID #291 & 293.) Lester's cryptic letter absolutely does not make the assertion relied upon by the district court. Lester neither answered the appropriate questions under the ADA nor asked the appropriate questions. As such, the letter from Lester to Webasto is not a "legitimate" or "non-discriminatory" reason under the McDonnell Douglas-Burdine risk shifting paradigm.

The *McDonnell Douglas Corp. v. Green* (411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) risk shifting mechanism is well-known to this Court. As noted in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), at pp. 252-253:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason for the employee's rejection.' [citation omitted] Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. [citation omitted]"

In this instance, the district court acknowledged that McDonald had established a prima facie case of discrimination. The district court then erred by presuming that the reason proffered by Webasto was legitimate and non-discriminatory. As noted in *Burdine*, supra, at U.S. 255, when discussing the employer's proffered reason: "[T]he explanation provided must be legally sufficient to justify a judgment for the defendant." In this instance, the letter from Dr. Lester is not legally sufficient to justify a judgment or even answer any relevant inquiries. Dr. Lester does not opine that McDonald failed his pre-employment physical. In fact, Lester later conceded that McDonald passed his pre-employment physical. Dr. Lester does not opine as to whether or not McDonald could perform the job duties required of the job description. In fact, Lester conceded that McDonald could perform all of the job duties based on the functional capacity tests administered by Kentucky Back Center. The opinion offered by Lester in his two-sentence letter does not assist Webasto at all in defending the relevant issues in an ADA claim. The Lester opinion is thus far from "legally

16

sufficient to justify a judgment for the defendant', as required by *Burdine*, supra.  In fact, the letter from Lester proves that Webasto violated the ADA by refusing to hire McDonald based on a test which did not utilize appropriate criteria under the ADA.

## II.   THE DISTRICT COURT ERRED BY CONCLUDING THAT COLIN MCDONALD COULD NOT OVERCOME THE REASON PROFFERED BY WEBASTO UNDER THE MCDONNELL DOUGLAS-BURDINE FRAMEWORK.

As noted above, the reason proffered by Webasto for its action against McDonald was neither legitimate nor non-discriminatory.  Assuming, for argument's sake only, that the letter to Dr. Lester met the employer's burden under *McDonnell Douglas*, supra, the district court erred by concluding that McDonald would be unable to establish pretext.  As noted in *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008):

> "In order to establish pretext, a plaintiff must demonstrate that (1) the proffered reason had no basis of fact; (2) the proffered reason did not actually motivate plaintiff's termination; or (3) the proffered reason was insufficient to motivate plaintiff's discharge.  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)."

McDonald can establish pretext in that the proffered reason is insufficient to motivate the action against plaintiff.  Simply put, the reason was insufficient because the letter from Dr. Lester does not provide an affirmative defense under the ADA or

answer any of the essential questions that would allow Webasto to disregard the protections of the ADA. Lester did not opine (as mistakenly believed by the district court) that McDonald could not perform essential job functions. When Lester ignored the applicable standard of inquiry under the ADA, Webasto possessed a duty to seek clarification from Lester. Had Webasto sought clarification from Lester, they would have discovered that McDonald fully completed and passed all of the physical examinations permitted by the ADA.

A factual issue as to pretext can also be established through the first Red Point physical. The district court ignored the fact that Webasto requested and possessed the passing results from the Red Point physical. Webasto required the second exam because Webasto regarded McDonald as disabled, i.e., as suffering from a history of back problems. A jury could conclude, based on the conduct of Webasto after receiving the Red Point results, that Webasto intentionally discriminated against McDonald because of a perceived disability. The fact that Webasto shopped and subjected McDonald to a second examination, after McDonald passed the first examination, creates, on its face, a strong inference of pretext sufficient to present the case to a jury.

In this instance, the deposition of Dr. Lester also establishes that his opinion, and the excuse of Webasto, has no basis in fact. Not only was the letter non-responsive to relevant ADA issues, but the physical examination of McDonald did not

provide a reason for not hiring McDonald. A jury issue thus exists as to whether or not the reason for the employment decision was based on fact or mere conjecture in support of discrimination.

Under the circumstances, ample evidence exists to support discrimination by Webasto under the ADA. A jury could reasonably be expected to reject Webasto's explanation. McDonald should be given the opportunity to present his case to a jury.

### III.  ISSUES OF FACT PRECLUDE DISMISSAL OF THE STATE CLAIMS OF MCDONALD.

The district court concluded that because McDonald was an at-will employee, his contract and estoppel claims were not actionable under Kentucky law.

The ruling of the Court ignores questions of material fact relating to the formation of contract. McDonald testified that he was offered a job without qualification and asked to immediately tender his resignation with his current employer. Webasto disputes the contention of McDonald, although Webasto admittedly did not disclose in writing to McDonald the employment physical requirement as normally disclosed in writing by Webasto.

Even if, for argument's sake only, the pre-employment physical was a condition of employment, McDonald satisfied that condition on March 10, 2011, by passing the

Red Point exam.  By the time Webasto forced McDonald to submit to the second ADA prohibited examination, McDonald had already lost his employment with Washington Penn. A question of fact thus exists as to whether or not the completion of the Red Point Medical examination resulted in McDonald's employment, even under the theory of contract advanced by Webasto.

The district court dismissed the McDonald contract claim under the theory that an employee terminable "at-will" cannot recover for breach of contract.  While the decision is correct with respect to future lost wages, the "at-will doctrine" does not preclude all compensatory damages which may arise from breach of contract, provided that the injury arose from the breach of the agreement. *Aker v. Smith*, 290 S.W.2d 496, 498 (Ky. 1956).  Under Kentucky law, Colin McDonald would also be entitled to equitable remedies in the event that he establishes a claim of promissory estoppel. *Lichtefeld-Massaro, Inc. v. R.J. Manteuffel Co., Inc.*, 806 S.W.2d 42 (Ky. App. 1991).  Even if the at-will doctrine precludes recovery of future lost wages, the doctrine does not prohibit recovery of damages arising from the breach of the employment contract which include the financial losses incurred as a direct consequence of the illegal activities of Webasto.

The opinion of the district court erroneously applied the "at-will doctrine" to McDonald's case.  The "at-will doctrine" does not permit termination of a protected employee for any illegal reason.  Because a question of fact exists as to whether or not

20

Webasto refused to hire McDonald in violation of the ADA, summary judgment under the at-will doctrine is inappropriate.

Because questions of fact exist as to the formation of the contract between the parties and the nature of the contract, the court should have denied summary judgment and permitted McDonald the opportunity to present the breach of contract claim to the jury.

## CONCLUSION

For the reasons set forth above, McDonald requests that the Court REVERSE the summary judgment of the district court in this action and REMAND for further proceedings.

Respectfully submitted,

LOGAN BURCH & FOX
By:    /s/ Stewart C. Burch
          Stewart C. Burch, KY Bar #81181
          114 West Clinton Street
          Frankfort, Kentucky 40601
          Phone: (502) 875-3884
          Fax: (502) 875-1113
          Web: http://www.lbflawky.com
          Email: sburch@lgpllc.com

21

## CERTIFICATE OF COMPLAINCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    /s/ Stewart C. Burch
Attorney for Appellant
Dated: December 19, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of December, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. All other counsel of record will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system

/s/ Stewart C. Burch

Stewart C. Burch

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

*RE1.*  Complaint (December 29, 2011).  Page ID #1-5.

*RE 24-1.*  Deposition of Colin McDonald (July 29, 2013).  Page ID #196-204.

*RE 24-2.*  Deposition of Liz Beatty (July 29, 2013). Page ID #205-208.

*RE 24-4.*  Red Point Medical Examination (July 29, 2013). Page ID #210.

*RE 24-5.*  Deposition of Heather Pile (July 29, 2013). Page ID #211.

*RE 24-6.*  Position Description (July 29, 2013). Page ID #217.

*RE 24-7.*  Telephone Record (July 29, 2013). Page ID #218.

*RE 24-8.*  Deposition of Dr. Lester (July 29, 2013).  Page ID #219-220, 224, 228-229.

*RE 24-9.*  Letter from Dr. Lester to Liz Beatty (July 29, 2013).  Page ID #230.

*RE 24-10.*  Deposition of Mike Pattison (July 29, 2013).  Page ID #233.

*RE 32.*  Memorandum, Opinion & Order (granting summary judgment) entered by the Eastern District of Kentucky (October 18, 2013).  Page ID #281-294.

*RE 33*.  Judgment entered by the Eastern District of Kentucky (October 18, 2013). Page ID #295-296.

*RE 34.*  Notice of Appeal (October 23, 2013).  Page ID #297-298.