No. 13-6375

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**
_____


**COLIN MCDONALD, Plaintiff-Appellant**

**v.**

**WEBASTO ROOF SYSTEMS, INC., Defendant-Appellee**

_____

**On Appeal from the United States District Court
for the Eastern District of Kentucky**

_____

**REPLY BRIEF OF APPELLANT**
_____


**Stewart C. Burch
Logan Burch & Fox
114 West Clinton Street
Frankfort, Kentucky 40601
(502) 875-3884
Fax: (502) 875-1113
Email: sburch@lgpllc.com
Web Address: http://www.loganburchandfox.com**

**Counsel for Plaintiff-Appellant**


**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS . . . . . . 12

# TABLE OF AUTHORITIES

## CASES

*Caminettie v. United States*, 242 U.S. 470, 490;
37 S.Ct. 192; 61 L.Ed. 442 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Glaser v. Chase Home Finance, LLC*, 704 F.3d 453,460
(6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241;
109 S.Ct. 1026; 109 L.Ed.2d 290 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATUTES, RULES AND FEDERAL REGULATIONS

29 C.F.R. §1630.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R. §1630.14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

29 C.F.R. §1630.14(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R. §1630.14(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

29 C.F.R. Appendix to Part 1630 - Interpretive Guidance
on Title I of the Americans with Disabilities Act . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# REPLY ARGUMENT

The Webasto Brief demonstrates an indifferent disregard of both the facts of this case and the Americans with Disabilities Act ("ADA").

Webasto asserts that McDonald did not pass his first pre-employment physical despite the clear and unequivocal language of the report from Red Point Medical which states that McDonald can "perform essential job functions." (Red Point Medical Examination, RE 24-4, Page ID#210). In judging whether McDonald passed the test, the only applicable criteria in this instance is the criteria of the ADA.

Under 29 CFR §1630.14(b)(3), the examination criteria must be job-related and consistent with business necessity. The medical examination must determine whether performance of the essential job functions could be accomplished without reasonable accommodation as required under the statute. Under the only relevant criteria, the ADA examination criteria, McDonald passed the Red Point examination.

Rather than accept the Red Point Medical results under ADA criteria, Webasto shopped for a second medical opinion, even though its own vendor advised that McDonald could perform all essential job functions.

Webasto has sought to diminish the importance of the Red Point physical examination by insinuating that McDonald was not forthcoming with certain medical evidence. The insinuation is completely unfounded. Neither Webasto, Red Point, or

Dr. Lester's office testified that McDonald was anything other than completely truthful and cooperative during his interviews or examinations. Webasto's efforts to shift focus from its illegal conduct by suggesting improper conduct by McDonald, without any basis in the record, is lamentable.

The results provided by Red Point precluded Webasto from subjecting McDonald to a second examination. 29 CFR §1630.14(b) limits an employee to "a physical examination" after making an offer of employment to a job applicant. That section, by its plain language, envisions a single examination. If multiple examinations had been intended, the regulation would have used the plural form of examination, i.e. "examinations".

Webasto, like the District Court, chose to ignore the plain language of the regulation and assert that McDonald has offered no legal support for its argument that the ADA precluded a second examination under the circumstances. To the contrary, McDonald offers established rules of the English language in support of his construction of 29 CFR §1630.14(b). This Court has noted in *Glaser v. Chase Home Finance, LLC*, 704 F.3d 453, 460 (6th Cir. 2013):

> "As with all matters requiring statutory interpretation, we begin with the text. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241; 109 S.Ct. 1026; 109 L.Ed.2d 290 (1989). 'If the words are plain, they give meaning to the act, and it is neither the duty or the privilege of the court to enter speculative fields in search of a different meaning.'

*Caminettie v. United States*, 242 U.S. 470, 490; 37 S.Ct.
192; 61 L.Ed.442 (1917)."

In this instance, the applicable regulation repeatedly refers to a single examination. For example, the heading of §1630.14(b) states "Employer Entrance Examination". The following sentence states that a covered entity may require "a medical examination." §1630.14(b)(2) states "The results of such examination shall not be used for any purpose inconsistent with this part." Had multiple examinations been intended under 29 CFR §1630.14(b), the regulation should have stated "examinations" rather than "examination". A single successful examination is further consistent with the objective of the ADA. The ADA protects individuals who are qualified for a job from discrimination because they are regarded as disabled. The relevant inquiry under the ADA is whether an otherwise qualified individual can perform the job. In this instance, Red Point Medical unequivocally stated to Webasto that McDonald could perform the job.

Webasto attempts to obfuscate the plain language of 29 CFR §1630.14(b) by arguing that because the phrase "medical examinations" is used in 29 CFR §1630.14(b)(3), multiple examinations must accordingly be permitted. That subsection utilizes the plural of "examination" because the subsection refers to the standards for all examinations (or each single examination) performed under 29 CFR §1630.14(b). The argument of Webasto ignores the plain meaning and context of the

language of the regulations.  Both Webasto and the District Court chose to ignore the evidence from Red Point Medical.  For the reasons set forth above, the Red Point physical is dispositive of the issues under the ADA.  At a minimum, the Red Point results create a question of fact that should have defeated Webasto's Motion for Summary Judgment.

In its Brief to this Court, Webasto repeatedly asserts that the second examination by Dr. Lester established that McDonald could not perform essential job functions.  That determination cannot be found in the letter to Webasto from Dr. Lester.

The only information received by Webasto from Dr. Lester, at the time of its decision not to hire McDonald, was a one-page letter which read in substantive part: "Dear Ms. Beatty, I have reviewed the records provided in regards to Mr. McDonald and discussed the finding from his pre-employment physical with Ruth Ann Combs, ARNP.  I would not recommend that he work within the job description provided. Please do not hesitate to contact my office with any questions."  (Letter from Lester to Beatty, RE#24-9, Page ID#230).

Nowhere in the correspondence from Lester to Webasto is there any discussion of whether McDonald could perform his essential job duties, with or without accommodation.  Nowhere in the letter from Lester is there any concern expressed

about McDonald's future abilities to perform the job duties. Nowhere in the letter is there any reference to any testing results. At the time that Webasto made its unlawful decision to withdraw its offer of employment to McDonald, the Lester letter consituted the only information available to Webasto, aside from the Red Point results. Webasto's continued assertion that the one-page letter from Dr. Lester somehow supported a finding that McDonald could not perform essential job functions under the ADA ignores the record in this action and the actual words of Dr. Lester.

Webasto placed complete reliance on Dr. Lester's letter as the reason for not hiring McDonald. The District Court granted the Webasto Motion for Summary Judgment on the grounds that the Dr. Lester letter was relied upon by Webasto, without considering whether the medical examination by Dr. Lester met the criteria of the ADA. As noted in 29 CFR Appendix to Title I - Interpretive Guidance on Title I of the Americans with Disabilities Act, Webasto should have considered the following:

> "Medical examinations permitted by this section are not required to be job-related and consistent with business necessity. However, if an employer withdraws an offer of employment because the medical examination reveals that the employee does not satisfy certain employment criteria, either the exclusionary criteria must not screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, or they must be job-related and consistent with business necessity. As part of the showing

> that exclusionary criteria is job-related and consistent with business necessity, the employer must also demonstrate that there is no reasonable accommodation that will enable the individual with a disability to perform the essential functions of the job.  See Conference Report at 59-60; Senate Report at 39; House Labor Report at 73-74; House Judiciary Report at 43."

The letter from Dr. Lester does not address what exclusionary criteria was applied to deprive McDonald of his job and thus cannot be considered a legitimate non-discriminatory reason under the ADA.  As shown by the deposition of Dr. Lester, McDonald in fact passed all functional capacity tests administered by Dr. Lester's office.  McDonald met each of the typed criteria for the job description.  McDonald even met the handwritten qualifications added by Webasto for the Lester examination.  Although reasons for his opinion are not set forth in the letter of Lester, the Lester deposition reveals that the criteria utilized by Lester in depriving McDonald of his job violates the ADA.  Specifically, Lester acknowledged that McDonald could perform all job-related criteria at the time that the test was taken.  Instead, Lester recommended not hiring McDonald based on what might happen in the future based on a history of back pain.  In other words, Lester and Webasto regarded McDonald as disabled because of what might happen in the future.  The theory applied by Lester was thus not job-related, but rather speculative.

Additionally, as required by the regulation and as noted in the commentary above, Webasto was required to demonstrate that no reasonable accommodation

would enable McDonald, who Webasto regarded as having a degenerative disk disability, to perform the essential functions of the job. Sadly, no accommodations whatsoever were required for McDonald to work at Webasto.

Webasto is entitled to assert a legitimate non-discriminatory reason for its conduct under the McDonnell Douglas risk-shifting paradigm but that reason must be legitimate. The legitimacy of the reason must be measured in this instance by whether the reason justifies Webasto's action under the ADA. The reason offered by Lester and Webasto does not conform in any way to the criteria of the ADA.

To support its position after the fact, Webasto attempts to cobble together medical records taken from McDonald's previous employer, Washington Penn, and the deposition testimony of Dr. Lester.

Based on a series of leading questions, Dr. Lester opined at his deposition (taken after the filing of the lawsuit), that McDonald could not perform the job duties required for his position. At the same time, Dr. Lester conceded that McDonald had passed all of the functional capacity tests administered by his clinic and that his opinion was based on concerns about what might happen in the future (Deposition of Lester, RE#24-8, Page ID#227-229). None of the after the fact information provided through Lester's deposition changes the essential fact that Webasto relied exclusively upon the opinion of Dr. Lester in withdrawing its offer of employment to McDonald.

The Lester letter is completely silent as to the relevant inquiry, i.e., whether McDonald could perform the essential job functions with or without accommodation.

Webasto also continues to cherry pick information from McDonald's previous employer, Washington Penn, arguing that he had been placed on light duty, falsely arguing that he had prior absences relating to a complaint of back pain, and wrongfully asserting, without any medical support, that McDonald suffered from "extensive and severe back injuries". See Webasto Brief, pg. 17. Those assertions are made to the Court while conveniently not informing the Court that McDonald was relieved of any job restrictions, missed no appreciable work, and passed a rigorous functional capacity test in excess of four hours which removed McDonald from any light duty restrictions (Deposition of Mike Pattison, RE#24-10, Page ID#233).

Webasto's repeated assertions that McDonald did not pass the medical examinations is only supportable if the requirements of the ADA are completely ignored. The written Red Point Medical results reflect that McDonald could perform all essential job functions. Red Point reported no physical infirmities which would limit or prohibit McDonald from performing the job for which he was hired. Likewise, McDonald performed all of the actual job-related criteria tests administered by Dr. Lester's office. McDonald successfully lifted all weights as requested by the Lester office for the time required by Lester. No indications exist that McDonald complained of any pain or was in any way physically limited during the examinations

8

performed by Dr. Lester.  Dr. Lester, who never physically met McDonald, based his opinion exclusively on what might occur in the future.  Dr. Lester's reasoning is rejected by the ADA as a basis for not hiring otherwise qualified individuals. Regardless of Webasto's comments to the contrary, McDonald passed both examinations under the only appropriate criteria.

## CONCLUSION

For the reasons set forth in McDonald's Brief, the summary judgment and order of dismissal of the District Court should be REVERSED.

Respectfully submitted,

LOGAN BURCH & FOX

By:     /s/ Stewart C. Burch
        Stewart C. Burch, KY Bar #81181
        114 West Clinton Street
        Frankfort, Kentucky 40601
        Phone: (502) 875-3884
        Fax: (502) 875-1113
        Web: http://www.loganburchandfox.com
        Email: sburch@lgpllc.com

## CERTIFICATE OF COMPLAINCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 1,961 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

      /s/ Stewart C. Burch
Attorney for Appellant
Dated: February 17, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of February, 2014, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt.  All other counsel of record will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system

    /s/ Stewart C. Burch

Stewart C. Burch

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

*RE 24-4.*  Red Point Medical Examination (July 29, 2013). Page ID #210.

*RE 24-8.*  Deposition of Dr. Lester (July 29, 2013).  Page ID #219-220, 224, 228-229.

*RE 24-9.*  Letter from Dr. Lester to Liz Beatty (July 29, 2013).  Page ID #230.

*RE 24-10.*  Deposition of Mike Pattison (July 29, 2013).  Page ID #233.